## STEPHENS COUNTY V. J. N. McCAMMON, INC.

No. 5692.   Decided June 20, 1932.

(52 S. W., 2d Series, 53.)

*Thos. B. Ridgell, Lyndsay D. Hawkins* and *W. J. Arrington,* all of Breckenridge, and *Luther Nickels,* of Dallas, for appellant.

The Court of Civil Appeals, having appellate jurisdiction only, except in certain specified cases, may not lawfully consider, for any purpose, or give any effect to, the certificate of the Secretary of State tendered by appellee, J. N. McCammon, Inc., for the first time in its motion for rehearing in the Court of Civil Appeals. Constitution of Texas, Art. 5, Sec. 6; R. S., 1925, Art. 1822; Union Mort. Co. v. McDonald, 30 S. W. (2d) 506; Wood v. Yarbrough, 41 Texas, 540; Nalle v. City of Austin, 85 Texas, 520, 22 S. W., 960; Ellis v. Harrison, 24 Texas Civ. App., 13, 56 S. W., 592; Bingham v. Graham, 220 S. W., 109.

Article 1302, subd. 45, R. S., 1925, does not authorize the formation in Texas of a corporation to engage in the professional busines of an architect; wherefore the contract sued on here was and is *ultra vires,* and the third question certified to the Supreme Court by the Court of Civil Appeals should be answered affirmatively. Zurn v. Mitchell, 196 S. W., 544; Kaplan Dry Goods Co. v. Sanger Bros., 214 S. W., 485; Passmore v. Dallas Distributing Co., 1 S. W. (2d) 666; First Natl. Bank v. Greenville O. & C. Co., 60 S. W., 829.

The letting of the contract sued on without competitive bids as required by R. S., 1925, Article 2368, cannot be justified in law on the ground that its performance required "technical knowledge, skill, experience and business judgment," since (a) the contract here is with a corporation, which, in nature, cannot possess such personal attributes, (b) the corporation here did not possess such attributes because two of its three sole stockholders were not architects, and (c) the corporation here is denied legal authority to contract to render much, if not most, of the professional services it contracted to render. Gulf Bitulithic Co. v. Nueces County, 11 S. W. (2d) 305-309; Cochran County v. West Audit Co., 10 S. W. (2d) 229; Caldwell v. Crosser, 20 S. W. (2d) 822; Harris v. Road Dist. No. 4, 6 S. W. (2d) 340; Commissioners Court, Madison Co. v. Wallace, 118 Texas, 279, 15 S. W. (2d) 535.

*Goggans & Allison,* of Breckenridge, for appellee.

On question of whether the Court of Civil Appeals could consider the certificate of the Secretary of State attached to appellee's motion for rehearing: Robinson v. State, 87 Texas, 562, 29 S. W., 649; McWhorter v. Northcutt, 94 Texas, 86, 58 S. W., 720; Watkins v. Huff, 94 Texas, 631, 64 S. W. (2d) 682.

On the question of the authority of Stephens County to enter into contract in this suit without first submitting the proposed contract to competitive bids: Tackett v. Middleton, 280 S. W., 563; Gulf Bitulithic Co. v. Nueces County, 11 S. W. (2d) 305.

Was the contract ultra vires? William Messer Co. v. Rothstein, 129 App. Div., 215, 113 N. Y. S., 772.

MR. JUDGE LEDDY of the Commission of Appeals delivered the opinion for the court.

The Honorable Court of Civil Appeals for the Eleventh Judicial District submits to the Supreme Court the following certified questions:

"In this cause the appellee, J. N. McCammon, Inc., plaintiff

below, sued the appellant, Stephens County, defendant below, for damages growing out of the alleged breach of a contract, by the terms of which it is alleged the plaintiff was employed by the commissioners court as an architect to prepare plans and specifications for, and to supervise the proper construction of, a combination courthouse and jail in said county. The plaintiff recovered a judgment for the damages alleged, and in the original opinion by this court, of date March 21st, 1930, we reversed the cause upon the sole point that the trial court should have permitted the defendant, Stephens County, to withdraw certain pleadings and urge a plea in abatement, based upon the contention that the plaintiff, appellee here, had failed to pay its franchise tax, and was, therefore, without authority to institute and maintain the suit in the courts of this state. There is attached hereto and made a part hereof this court's original opinion reversing the judgment of the trial court.

"The cause is now pending in this court upon motion for rehearing by the appellee, and that motion for rehearing is accompanied by a certificate from the Secretary of State, showing that the appellant, a corporation, since the rendition of our original opinion, has paid its franchise tax, and by reason thereof had its right to do business in Texas revived as per the certificate of the Secretary of State, which is as follows:

" 'THE STATE OF TEXAS
DEPARTMENT OF STATE

" 'I, Jane Y. McCallum, Secretary of State of the State of Texas, hereby certify that J. N. McCammon, Inc., a domestic corporation of Dallas, Texas, has this day paid all franchise taxes and penalties due by it to the State of Texas from May 1, 1927, to May 1, 1931, amounting to $68.50 and by reason thereof its right to do business has this day been revived and notation to that effect has been entered on the ledger account of such corporation.

(SEAL)

" 'In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in the City of Austin, this 1st day of April, A. D., 1930.

" 'Jane Y. McCallum,
Secretary of State.'

"In passing upon this motion for rehearing we are, therefore, presented with the question of whether we have the authority to act upon the information contained in the certificate, or must look only to the record proper as brought to this court.

Of course, the fact evidenced by the certificate did not exist at the time of the trial of the lawsuit in the court below, nor at the time this court rendered its original opinion. The certificate appears for the first time in this court attached as an exhibit to the appellee's motion for rehearing. This statement is made in view of the following question to be propounded, viz:

"1. Can this court act upon the information contained in said certificate and by reason thereof regard as moot the question arising from the failure of said corporation to pay its franchise tax, and thereupon be under the duty or have the authority to pass to a consideration of the additional assignments upon which the appeal is predicated?

"As a basis for the other questions this court deems it necessary to propound to the Supreme Court, the following additional statement of the record in this cause is made. The appellee, J. N. McCammon, Inc., brought this suit against Stephens County, alleging that on September 22nd, 1924, the county, acting through its commissioners court, contracted with the Mid-West Company, Inc., a Texas corporation which thereafter merely changed its name to J. N. McCammon & Co., Inc., whereby it was agreed that the Mid-West Co., Inc., would, for a consideration, perform for the county certain architectural work and services pertaining to the making and furnishing of plans and specifications for a courthouse and jail to be erected in that county, and to supervise the work or construction thereof. This contract is found on page 77 et seq. of the statement of facts, and is here referred to and made a part of this certificate.

"The stockholders of the Mid-West Co., Inc. were J. N. McCammon, a professional architect, A. D. McCammon, his wife, and S. J. McFarland, a banker. At a meeting of said stockholders on June 29th, 1925, the name of the corporation was changed to J. N. McCammon & Co., Inc., the stockholders remaining the same and the charter being unchanged, except as to its name. The contract was signed by the contracting parties in the following manner:

" 'County of Stephens,
         By E. F. Ritchey, County Judge,
H. B. Downing
W. I. Hunt
J. W. Horton
S. A. Reynolds
THE MID-WEST COMPANY, INC.,
         By J. N. McCammon, President.'

The first article of the contract is as follows:

" 'Article 1. *The architect's services.* The architect's profesional services consist of the necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings; the drafting of forms of proposals and contracts; the issuance of certificates of payment; the keeping of accounts, the general administration of the business and supervision of the work.'

"This provision of the contract is here inserted, because it especially reflects the nature of the services which the county sought and which Mid-West Company, Inc., and its successor undertook to perform. But it is desired that each provision of the contract bearing upon the questions propounded be considered in this connection, since the contract as a whole has been made a part hereof. Further, the plaintiff in his petition sought the recovery of the sum of $21,500.00 and, less some credits sought and allowed, recovered a judgment for the sum of $18,500.00, with 6 per cent interest from its date.

"The purpose for which the appellant corporation was formed is to be found in Subdivision 45 of Art. 1302, R. S., 1925, and reads as follows:

" 'The purpose for which private corporations may be formed: * * * 45. To design, purchase or sell, steel and iron and other metal products, and the manufacture of any or of all such products, and to design, sell, construct and erect engineering and architecture (architectural) structures, and to contract for the construction and erection of such structures.'

"An architect's work being professional in its nature, and Subdivision 45 above embracing no express authority to a corporation to perform the functions 'the general administration of the business and supervision of the work' stipulated for in Art. 1 above, and as contemplated by the contract as a whole; and since Art. 2368, R. S., 1925, provides that: 'No commissioners court shall make a contract calling for or requiring the expenditure or payment of $2000.00 or more out of any fund or funds of any county * * * without first submitting such proposed contract to competitive bids'; and since the contract was not awarded on competitive bids, we find it necessary to certify for your decision the following additional questions:

"2. Had Stephens County the authority in law to enter into the foregoing contract with the Mid-West Co., Inc., a corporation, without first submitting the proposed contract to competitive bids?

"3. In view of that provision of the contract (Art. 1) call-

ing for 'the general administration of the business and supervision of the work' by the corporation, was the contract ultra vires as to the Mid-West Co., Inc., and for that reason nonenforcible as to Stephens County at the date of its alleged breach?

"The members of this court entertaining a diversity of opinion upon the questions presented, it is deemed proper and expedient to certify to Your Honorable Court the questions hereinbefore noted, and answers to them are respectfully requested."

The first question certified must be answered in the negative.

■ When an appellate court is called upon to revise the ruling of a trial court it must do so upon the record before that court when such ruling was made. A party to a suit will not be permitted to try his case in the appellate court on a different statement of facts than that presented in the court below. Willis Bros. v. Smith et al., 90 Texas, 635, 40 S. W., 401; Holland v. Jackson, 121 Texas, 1, 37 S. W. (2d) 726.

■ We answer the second question in the affirmative and the third in the negative.

This cause was originally submitted to Section A of the Commission. Its opinion was delivered by Judge Sharp, in which the second question was answered in the affirmative and the third question in the negative. The case was withdrawn by the Supreme Court because of its disagreement with the Commission's answer to the first certified question. It was subsequently argued before the Supreme Court sitting with both Sections of the Commission.

After giving the case further consideration, we see no reason for changing the answers made in Judge Sharp's opinion to the last two questions. We are not only in accord with the answers made by him to these two questions, but agree with the resoning by which his conclusions were reached. We therefore adopt that portion of his opinion discussing the second and third questions. It is as follows:

"This brings us to the consideration of Question No. 2. The record shows that Stephens County intended to erect and fully equip the jail building together with necessary courthouse improvements.

"The Commissioners Court of that county employed appellee as an architect to prepare plans and specifications for and to supervise the proper construction of a combination courthouse and jail in said county. A contract dated September 22, 1924,

was entered into by Stephens County and the Mid-West Co., Inc.

"It is earnestly contended that by reason of Article 2368, R. S., 1925, which provides that:

" 'No commissioners court shall make a contract calling for or requiring the expenditure or payment of $2,000 or more out of any fund or funds of any county * * * without first submitting such proposed contract to competitive bids," and since the contract was not awarded on competitive bids, it is void and unenforcible. The contract called for skill and experience on the part of the appellees. They were required to prepare suitable plans for the work to be done in the construction of a jail and perhaps a new courthouse. The county was vitally interested in procuring the services of a skilled and experienced person or concern to draw up the necessary plans and supervise the work while going on. To hold that contracts for this kind of work must be let to the lowest bidder, would inevitably result in the county being placed in a position which would require it to accept the services of incompetent persons. Naturally, one, who has no skill, experience, or technical knowledge, could underbid one, who possesses the skill, technical knowledge, and experience, to perform this kind of service. In other words, to construe the statute as contended for, would place a premium upon incompetency and produce an unfortunate situation. To illustrate, could it be seriously contended that if a county desired the services of a skilled and competent attorney to represent the county in some important piece of litigation, involving a large sum of money, that the county should, before letting the contract, submit it to competitive bids, and then be required to hire the person making the lowest bid therefor? We think not. To do and perform the work for which appellee was employed required technical skill and experience of a high degree, and it is plain that the Legislature never intended that such services should be awarded upon competitive bids. We rest the conclusions reached upon this question upon the following decisions: Gulf Bitulithic Co. v. Nueces County (Com. App.), 11 S. W. (2d) 305; Hunter v. Whiteaker (Civ. App.), 230 S. W., 1096 (W. denied); Tackett v. Middleton (Com. App.), 280 S. W., 563; City of Houston v. Glover, 89 S. W., 426 (Civ. App.)

"We answer Question No. 2 'Yes.'

"Appellee was incorporated and chartered under Article 1302, R. S., Subdivision 45 thereof, which reads as follows:

" 'The purposes for which private corporations may be

formed are:

" '* * *

" '45. To design, purchase and sell steel and iron and other metal products and the manufacture of any or all of such products, and to design, sell, construct and erect engineering and architecture (architectural) structures, and to contract for the construction and erection of such structures.'

"Article 1320, R. S., 1925, says:

" 'Every private corporation as such has power:

" '* * *

" '7. To enter into any obligation or contract essential to the transaction of its authorized business.'

"The statute under which appellee was incorporated expressly authorizes a corporation to design buildings. The designing of a building is an architectural service. In R. C. L., Volume 2, page 399, an architect is defined as follows:

" 'An architect is one whose occupation it is to form or devise plans and designs and to draw up specifications for buildings or structures, and to superintend their construction.'

■ "It appears that Stephens County was in need of an architect and made a contract with appellee to perform certain services. Appellee was authorized to design and contract for the construction and erection of buildings. All of the things which it contracted to do in the contract involved in this suit were an integral part of the designing, contracting for the construction, and constructing buildings. A part of the work of constructing the buildings is the supervision of such construction and the administration of the business thereof.

■ "A corporation in the transaction of its business has the same latitude as the individual in the same character of business, in those things that are essential to the successful operation of that particular business.

■ "The doctrine of ultra vires ought to be reasonably understood and applied, and whatever may fairly be regarded as incidental to, or consequential upon, those things which a corporation has been authorized to do ought not, unless expressly prohibited, be held by judicial construction to be ultra vires. Texas Fidelity & Bonding Co. v. General Bonding Co., 216 S. W. (Com. App.), 144; Seely Oil Mill & Mfg Co. v. Bishop Mfg. Co., 235 S. W. (Com. App.), 850; Northside Ry. Co. v. Worthington, 88 Texas, 562, 30 S. W., 1055; Jacksonville Co. v. Hooper, 160 U. S., 514, 40 Law Ed., 515.

"It would be inconsistent and illogical to say that a concern

could be incorporated under the law for certain purposes and be authorized to make contracts within the scope of its power essential to the successful operation of its particular business, and then hold that the contract so made was not binding or enforcible upon the theory that it was ultra vires. We see no sound reason for so holding.

"We answer Question No. 3 'No.' "

The foregoing opinion is adopted as the opinion of the Supreme Court, and ordered certified.

C. M. CURETON, Chief Justice.