**Reverse and Remand; Opinion Filed February 27, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00068-CV

**STEVEN SPIRITAS, INDIVIDUALLY AND AS TRUSTEE OF THE SPIRITAS SF 1999 TRUST; SPIRITAS RANCH ENTERPRISES, LLP; AND J. SPIRITAS LAND & CATTLE COMPANY, Appellants**

**V.**

**SUSAN DAVIDOFF, INDIVIDUALLY AND AS TRUSTEE OF THE SPIRITAS SC 1999 TRUST, Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-08326**

## OPINION

Before Justices Bridges, Lang, and Evans
Opinion by Justice Lang

This is an accelerated interlocutory appeal of the trial court's order appointing a receiver

for two Texas entities. Those entities are appellants Spiritas Ranch Enterprises, LLP ("SRE"), a

Texas limited liability partnership, and J. Spiritas Land & Cattle Company ("JSLC").[1] Both

entities are owned in equal portions by two of the parties in this case, appellant Steven Spiritas,

individually and as trustee of the Spiritas SF 1999 Trust ("Spiritas"), and appellee Susan

Davidoff, individually and as trustee of the Spiritas SC 1999 Trust ("Davidoff").

---

[1] The other parties in this case disagree as to whether JSLC is a "Texas corporation" or a "Texas limited liability company." For purposes of this opinion, the distinction is immaterial.

In two issues on appeal, Spiritas contends the trial court (1) abused its discretion by appointing a receiver for SRE and JSLC because there is no evidence of any of the statutory requirements for appointment of a receiver and (2) erred "in concluding as a matter of law that an event requiring a 'winding up' of SRE occurred and its assets must be 'liquidated' by a receiver, when none of the statutory prerequisites for a winding up occurred and instead there was an event of withdrawal by Davidoff warranting the redemption of her partnership interest."[2]

We decide in favor of Spiritas on his first issue. We need not reach Spiritas's second issue. The portion of the trial court's order appointing a receiver for SRE and JSLC is reversed and this case is remanded to the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Spiritas contends, in part, there was no evidence before the trial court to support imposition of a receivership and as a matter of law it was error to appoint a receiver. Accordingly, we recount in detail the procedure and evidence before the trial court.

SRE was formed in 1977 by several members of the Spiritas family, including Steven Spiritas and his sister, Susan Davidoff, to hold approximately 745 acres of real property located near Highway 380 in Denton County, Texas (the "Property").[3] Currently, Spiritas and a trust he controls, the Spiritas SF 1999 Trust, collectively own fifty percent of SRE and Davidoff and a trust she controls, the Spiritas SC 1999 Trust, collectively own the remaining fifty percent. Additionally, Spiritas and Davidoff are equal shareholders in JSLC, which uses the property held by SRE to operate a cattle business.

Spiritas filed this lawsuit against Davidoff on July 29, 2013. In his live petition at the time of the order complained of, Spiritas sought (1) damages for breach of the partnership

---

[2] Spiritas states in his brief in this Court, and Davidoff does not dispute, that "[a]lthough [SRE] and [JSLC] are also named as plaintiffs-appellants, they do not seek any relief in this appeal."

[3] SRE was originally formed as a general partnership, but was later converted to a limited liability partnership.

agreement governing SRE (the "Partnership Agreement") and breach of fiduciary duties allegedly owed by Davidoff and (2) declaratory relief, including a declaratory judgment that a July 30, 2013 letter from Davidoff to Spiritas requesting a "winding up" of SRE (the "July 30, 2013 letter") constituted "an event of withdrawal" as to SRE. Spiritas asserted in part in his live petition that Davidoff (1) "refuses to participate in any business venture controlled by [SRE]"; (2) "takes every step to frustrate the conduct of partnership business by various means, including but not limited to seeking to force the sale of [the Property]"; (3) has "intentionally and willfully obstructed the partnership from conducting partnership affairs"; and (4) is "making it impossible to carry on the business of [SRE]."

Davidoff filed (1) a general denial answer and (2) a motion asking the trial court to abate this case pending final disposition of a separate lawsuit filed by her against Spiritas on July 30, 2013, in the 191st Judicial District Court in Dallas County or, alternatively, transfer this case to the 191st Judicial District Court so "both lawsuits may be heard jointly."[4] The trial court signed a September 20, 2013 order granting a motion[5] by Spiritas to transfer the above-described lawsuit filed by Davidoff from the 191st Judicial District Court to the trial court and consolidate the two cases in the trial court. Subsequent to that order, Spiritas filed a general denial answer respecting Davidoff's claims.

On November 19, 2013, Davidoff filed an "Emergency Motion for Authority to Sell Partnership Property or, in the Alternative, to Appoint a Receiver." According to Davidoff's motion,

---

[4] In her petition filed in the 191st Judicial District Court, Davidoff asserted the following "claims and causes of action": (1) "declaratory relief," including a request for declarations "[t]hat the owners, directors, managers and officers of JSLC and SRE are hopelessly deadlocked and that JSLC and SRE have suffered and will suffer irreparable harm because of the deadlock" and "[t]hat the SRE partnership be wound up in accordance with the Partnership Agreement"; (2) "[a]pplication to wind up SRE"; and (3) breach of fiduciary duties by Spiritas based on his not agreeing to sell the Property.

[5] The record in this Court does not contain the motion filed by Spiritas described in the trial court's September 20, 2013 order.

–3–

The Property has been appraised and SRE has received a Letter of Intent ("LOI") to purchase the Property. . . . There currently exists a lot of activity in the area due to the current uptick in the housing market resulting in an increase in the value of the Property. . . . SRE does not realize a profit from JSLC's cattle operations nor does SRE receive rental payments from JSLC. Accordingly, the sale of the Property would result in substantial profits to SRE.

Unfortunately, Spiritas has refused to cooperate in the sale of the Property or in responding to the LOI. As both Spiritas and Davidoff own 50% of SRE, Spiritas' conduct will prevent SRE from taking advantage of the current market and maximizing the value of the Property to SRE. . . . The equal ownership structure combined with Spiritas' refusal to fulfill his fiduciary duties to SRE has dead-locked the management of SRE and rendered effective operation of the enterprise impossible—which necessitates the appointment of a Receiver.

Additionally, Davidoff asserted in her motion (1) "[a] few years ago, Spiritas spearheaded a plan to develop the Property as a single-family residential development"; (2) "[a]s part of this plan, SRE spent substantial sums hiring lawyers and consultants to apply for establishment of a Municipal Utility District ("MUD") on the Property," "spent sums for the design and plot of the Property into single family lots," and "executed a Development Standards Agreement with the City [sic] of Little Elm specifying development standards, lots sizes, and plans for re-zoning"; (3) after the MUD was approved and Little Elm agreed to residential development of the Property, Spiritas "refused to proceed with the marketing and sale of the Property" and "instead wants the Property to continue to be used for a cattle operation, rather than a lucrative residential development"; (4) "counsel for Spiritas advised [Davidoff] that Spiritas does not intend to authorize SRE to respond to the LOI or sale [sic] the Property"; (5) "[t]he failure of SRE to respond to the LOI will result in substantial harm to SRE"; (6) "[i]t is well within the [trial court's] powers to appoint a Receiver to wind up a partnership's affairs"; and (7) "[w]hether it is Davidoff or an appointed receiver, an individual must be designated immediately to allow SRE to maximize the value of the Property."

Exhibits attached to Davidoff's emergency motion included (1) a printout of email correspondence between Davidoff's husband and agent, Michael Davidoff, and Spiritas in

–4–

November 2011 and December 2011 pertaining to establishment and approval of the MUD; (2) a November 15, 2011 report prepared by consultants hired by SRE pertaining to residential development of the Property; (3) documents showing approval of the MUD; and (4) a November 1, 2013 cover letter from Davidoff's counsel to Spiritas's counsel describing a "letter of intent" to purchase the Property.[6]

Spiritas filed a November 27, 2013 response to Davidoff's emergency motion. Spiritas asserted in part that because Davidoff "committed an act of withdrawal from [SRE]" on July 30, 2013, she has "no standing or authority to seek the relief requested" in her emergency motion. Further, according to Spiritas,

> [T]he alternative sought, the appointment of a receiver, likewise fails as a matter of law. Most importantly, [Davidoff], who bear[s] the burden of proof, fail[s] to cite to and/or address [Texas Business Organizations Code] § 11.403's requirements for appointing a receiver. Instead, [Davidoff] argues that [Spiritas's] refusal to go along with a suspect Letter of Interest, addressed to an unrelated third party, expressing interest in the purchase of the partnership property somehow demonstrates substantial harm to the partnership. [Davidoff] provide[s] no credible expert testimony or other analyses concerning real property valuation and market conditions. Even had they done so, "materially injured," not "substantially harmed" is the proper threshold [Davidoff] must prove so as to be entitled to a receiver as a matter of law. In that same vein, [Davidoff's] Motion fails to address or otherwise explain why other available legal and equitable remedies are inadequate. To the contrary, adequate remedies do exist for [Davidoff] making the need for an appointment of a receiver unwarranted.

Attached to Spiritas's response was a November 27, 2013 affidavit of Spiritas with several exhibits, including copies of the Partnership Agreement and the July 30, 2013 letter.

In a December 4, 2013 reply to Spiritas's response, Davidoff argued in part that the trial court "should appoint a Receiver to manage the business of SRE and maximize the value of its assets." Specifically, Davidoff asserted,

---

[6] The November 1, 2013 cover letter states that the "letter of intent" is "enclosed." However, the record shows the exhibits attached to Davidoff's motion did not include the "letter of intent."

Spiritas's arguments . . . ignore the plain language of the SRE Partnership Agreement and misconstrue the [Texas Business Organizations Code]. Both facts and law reflect that (1) Spiritas actually withdrew from SRE first by refusing to continue to develop the property as agreed by the partners; (2) Davidoff has never withdrawn from SRE; and (3) an event requiring the winding up of SRE has occurred. Moreover, Spiritas's continued self-serving behavior unequivocally establishes that Davidoff should be given authority to sell the ranch and/or a receiver must be appointed to wind up SRE.

Attached to Davidoff's reply was a December 4, 2013 affidavit of Davidoff in which she testified in part, "I believe that it is in the best interest of SRE to proceed with the agreed plan to sell the property at this time in order to obtain the best return for the partners." Further, Davidoff stated in part in her affidavit as follows:

By the fall of 2013, the situation regarding the development and sale of SRE's property was becoming critical. Market demand for large tracts of property had substantially increased in the area and a lot of activity was occurring. In fact, I have received several Letters of Intent regarding the property. . . . [N]o action is being taken by SRE to negotiate the LOI's or to maximize the value of the property. [Spiritas] just refuses to take any action to proceed with the agreement to market and sale the property. . . . [Spiritas's] decision to ignore my requests and disregard these critical developments further threatens SRE and reflects [Spiritas's] effective withdrawal from SRE.

Exhibits attached to Davidoff's affidavit included in part (1) contracts between SRE and various professionals pertaining to establishment of the MUD; (2) the November 15, 2011 report described above pertaining to residential development of the Property; (3) the documents described above showing approval of the MUD; and (4) a February 21, 2012 email from Spiritas to Davidoff in which Spiritas states in part, "Over the years, JSLC became dysfunctional and impossible to properly manage solely because of your attitude and past actions, not mine."

One week later, Spiritas filed a December 10, 2013 affidavit "in further support" of his response to Davidoff's emergency motion. In that affidavit, Spiritas stated in part,

In light of the above-described events and continued urban sprawl along Highway 380, continuing the land and cattle operation indefinitely is not realistic. However, based upon my experience developing tracts of land to be marketed and sold to homebuilders, as well as my thirty-six years of experience managing [the Property], rushing this asset to market now is not in SRE's best interest. I have

–6–

made multiple requests to Susan Davidoff to name her price for the purpose of buying her partnership interest. . . . She has never responded.

Attached to Spiritas's December 10, 2013 affidavit were documents pertaining to establishment of the MUD and negotiations in 2006–2011 between SRE and the Town of Little Elm respecting the Property.

The trial court held a hearing on Davidoff's emergency motion on December 20, 2013. Rather than presenting live testimony, the parties agreed that their affidavits described above and the exhibits attached thereto would be submitted into evidence without objection. Further, three documents "referenced" in Davidoff's affidavit, but not attached, were offered into evidence "in camera" by Davidoff. Those documents consisted of an appraisal report and two "letters of intent" respecting the Property. As to those three documents, counsel for Spiritas stated "[f]or the purpose of showing that those exist and what they are, we do not object to them for purposes of this hearing," but "[w]e do object to them as hearsay for the truth of the matters, if we get into the valuation issues."[7]

The parties' counsel presented argument at the hearing and answered questions from the trial court. The argument of Davidoff's counsel included, in part, assertions that (1) the "primary asset" of SRE is the Property and (2) the Spiritas SF 1999 Trust and Spiritas SC 1999 Trust both "have loans to [SRE]."

In an order dated January 2, 2014, the trial court (1) accepted the parties' stipulation as to the affidavits and exhibits described above and (2) found that the documents offered into evidence "in camera" should be "admitted for the purpose of reflecting general interest in the property owned by [SRE]" and "also constitute some evidence of the potential value of such property." Further, the trial court concluded in part (1) the July 30, 2013 letter "does not

---

[7] The trial court subsequently signed an order granting a request by Davidoff to place those three documents under seal.

constitute an act of withdrawal by [Davidoff]"; (2) "an event requiring the winding-up of SRE has occurred"; (3) "SRE must begin winding up"; and (4) "Davidoff and Spiritas are deadlocked with respect to the governance and winding up of SRE and JSLC."  Additionally, the trial court stated in the order, in part,

> Since Davidoff and Spiritas are deadlocked and there is no method provided in either the organizational documents of SRE or JSLC to break the deadlock, the Court determines that neither Davidoff nor Spiritas can unilaterally undertake the actions necessary to wind up SRE and JSLC. Accordingly, the Court finds that it is in the best interest of both SRE and JSLC to have a Receiver appointed in order to wind up SRE and JSLC, including liquidating SRE's assets, paying its debts, and distributing the remaining proceeds, if any, to Davidoff and Spiritas in accordance with their respective interests.
> . . . Should the parties fail to inform the Court by February 3, 2014, that a winding-up process has been agreed upon by the parties, the Court hereby (l) appoints [a receiver], effective on February 4, 2014, to wind-up SRE and JSLC; (2) sets the bond to be posted by Davidoff for the appointment of the Receiver at $25,000.00. Should the appointment of the Receiver become effective, the Court specifically empowers the Receiver to take all steps necessary to market and sell the assets of JSLC and SRE—including, but not limited to, the ranch property.

Spiritas filed a notice of interlocutory appeal pursuant to Texas Civil Practice and Remedies Code section 51.014(a)(1) on January 17, 2014.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(1) (West Supp. 2014).

Subsequently, on February 21, 2014, the trial court held a hearing on a motion filed by Spiritas to "stay the [trial court's] order appointing a receiver or, alternatively, to set security for a stay of that order" pending his interlocutory appeal.[8]  At that hearing, Michael Davidoff testified in part on direct examination (1) in "the last 12 months or so," he "met with a couple of prospective interested buyers of [the Property]"; (2) he has received "letters of intent" to purchase the Property from two different developers; (3) one of the developers was "very interested" as to "the status of their offer" and, in a subsequent email, "indicated a willingness to come up with additional moneys for [the Property]"; (4) he has not responded to the "letters of

---

[8] The record on appeal does not contain Spiritas's motion.

–8–

intent" because he "can't"; and (5) the Denton Independent School District ("DISD") has made an offer to purchase approximately forty-two acres of the Property, on which it plans to build a school. Additionally, Michael Davidoff testified as follows:

> Q. Mr. Davidoff, in your opinion what's going to happen if we don't take immediate action to sell these properties and pursue these LOEs [sic] and negotiating with the DISD, how is that going to impact the value of these properties in your opinion?
>
> A. In my opinion, the fact that we are not responding shows kind of a lack of professionalism and a dysfunctionality amongst us. I'm not sure that—I don't know, to be quite honest with you.
>       The DISD offer will ultimately turn into an eminent domain request, and we have not responded to that as to whether or not we will accept their value or we want a higher value. That's one thing.
>       And we haven't responded to the other two interested parties or even hired a broker to list the property. And so, you know, my gut feel says that, although the location stays where it is, developers will move on. There is an almost 800-acre tract that [one of the developers described above] is developing across the street from us. You know, maybe they are going to focus on that.
>       These large tracts take a while to develop, and so their focus may be elsewhere by the time we get around to responding to them.

On cross-examination, Michael Davidoff testified in part "the second offer received was higher than the first offer per acre." Further, Michael Davidoff's testimony on cross-examination included the following exchange:

> Q. You testified earlier, sir, that you don't know what harm—what impact on the value it would have if the property is not immediately liquidated or these offers are not responded to. Correct?
>
> A. That is correct. All I could do is speculate.
>
> Q. Okay. So you don't know at this point in time that if this proceeding ends up with the motion to stay being granted, you have no understanding what dollar value—be it harm or by offers from any broker out there—how that's going to impact Mrs. Davidoff as a partner in SRE, do you?
>
> A. I can't answer that because I don't know what is going to happen in the future.

On redirect examination, Michael Davidoff testified in part that he "believe[s] that a higher price from the DISD can be achieved." Additionally, he stated that in his opinion, if SRE

–9–

"does nothing," it will have "lost" the additional amount he believes could be obtained in excess of the current DISD offer.[9] At the conclusion of the hearing, the trial court ruled "[t]he order for the appointment of the receiver will be stayed upon the posting by Mr. Spiritas of cash or surety bond in the amount of $750,000 within one week."

## II. APPOINTMENT OF RECEIVER

### A. Standard of Review

We review a trial court's order appointing a receiver for an abuse of discretion. *See, e.g., Benefield v. State*, 266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.). "It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles, or to rule without supporting evidence." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (citations omitted).

Further, "[w]hen an appellate court is called upon to revise the ruling of a trial court, it must do so upon the record before that court when such ruling was made." *Stephens Cnty. v. J.N. McCammon, Inc.*, 52 S.W.2d 53, 55 (Tex. 1932); *accord Tanner v. McCarthy*, 274 S.W.3d 311, 323 n.22 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (declining to consider testimony in record of hearing held subsequent to trial court's challenged ruling in deciding whether trial court abused its discretion by rendering turnover order unsupported by evidence); *Congleton v. Shoemaker*, Nos. 09-11-00453-CV, 09-11-00654-CV, 2012 WL 1249406, at *6 n.3 (Tex. App.— Beaumont Apr. 12, 2012, pet. denied) (mem. op.) (declining to consider evidence attached to motion to reform trial court's turnover order in deciding whether entry of such turnover order was abuse of discretion).

### B. Applicable Law

---

[9] Both parties state in their briefs in this Court that an agreement was subsequently reached by them respecting the retaining of eminent domain counsel by SRE in the DISD matter.

Pursuant to section 11.401 of the Texas Business Organizations Code, "[a] receiver may be appointed for a domestic entity or for a domestic entity's property or business only as provided for and on the conditions set forth in this code." TEX. BUS. ORGS. CODE ANN. § 11.401 (West 2012); *see also id*. § 1.002(18) (West Supp. 2014) (defining "domestic entity" for purposes of business organizations code as "an organization formed under or the internal affairs of which are governed by this code"). "Receivership is an extraordinarily harsh remedy and one that courts are particularly loathe to utilize." *Hillwood Inv. Props. III, Ltd. v. Radical Mavericks Mgt., LLC*, No. 05-11-01470-CV, 2014 WL 4294968, at * 3 (Tex. App.—Dallas Aug. 21, 2014, no pet.) (mem. op.). The burden to show the existence of circumstances justifying the appointment of a receiver rests on the party seeking the appointment. *Id*.

Section 11.403 of the business organizations code is titled "Appointment of Receiver for Specific Property." TEX. BUS. ORGS. CODE ANN. § 11.403. That section provides in part that a court may appoint a receiver in an action between partners or others jointly owning or interested in specific property only if (1) it is shown that the property "is in danger of being lost, removed, or materially injured"; (2) circumstances exist that are considered by the court to necessitate the appointment of a receiver to conserve the property and avoid damage to interested parties; (3) all other requirements of law are complied with; and (4) the court determines that other available legal and equitable remedies are inadequate. *Id*.

Section 11.404 of the business organizations code, titled "Appointment of Receiver to Rehabilitate Domestic Entity," provides in relevant part,

(a) Subject to Subsection (b), a court . . . may appoint a receiver for [a domestic entity's] property and business if:

(1) in an action by an owner or member of the domestic entity, it is established that:

(A) the entity is insolvent or in imminent danger of insolvency;

(B) the governing persons of the entity are deadlocked in the management of the entity's affairs, the owners or members of the entity are unable to break the deadlock, and irreparable injury to the entity is being suffered or is threatened because of the deadlock;

(C) the actions of the governing persons of the entity are illegal, oppressive, or fraudulent;

(D) the property of the entity is being misapplied or wasted; or

(E) with respect to a for-profit corporation, the shareholders of the entity are deadlocked in voting power and have failed, for a period of at least two years, to elect successors to the governing persons of the entity whose terms have expired or would have expired on the election and qualification of their successors;

(2) in an action by a creditor of the domestic entity, it is established that:

(A) the entity is insolvent, the claim of the creditor has been reduced to judgment, and an execution on the judgment was returned unsatisfied; or

(B) the entity is insolvent and has admitted in writing that the claim of the creditor is due and owing; or

(3) in an action other than an action described by Subdivision (1) or (2), courts of equity have traditionally appointed a receiver.

(b) A court may appoint a receiver under Subsection (a) only if:

(1) circumstances exist that are considered by the court to necessitate the appointment of a receiver to conserve the property and business of the domestic entity and avoid damage to interested parties;

(2) all other requirements of law are complied with; and

(3) the court determines that other available legal and equitable remedies, including the appointment of a receiver for specific property of the domestic entity . . . are inadequate.

*Id*. § 11.404.

Additionally, under section 11.405 of the code, titled "Appointment of Receiver to Liquidate Domestic Entity; Liquidation," a court "may order the liquidation of the property and business of [a] domestic entity and may appoint a receiver to effect the liquidation" in several

–12–

specific instances. *Id.* § 11.405(a). Those instances include "on application of a creditor of the entity if it is established that irreparable damage will ensue to the unsecured creditors of the domestic entity as a class, generally, unless there is an immediate liquidation of the property of the domestic entity."[10] *Id.* § 11.405(a)(4). However, a court may order a liquidation and appoint a receiver under section 11.405(a) only if (1) "the circumstances demand liquidation to avoid damage to interested persons"; (2) all other requirements of law are complied with; and (3) the court determines that all other available legal and equitable remedies, including the appointment of a receiver for specific property of the domestic entity and appointment of a receiver to rehabilitate the domestic entity, are inadequate. *Id.* § 11.405(b).

Section 11.054 of the code is titled "Court Supervision of Winding Up Process." *Id.* § 11.054. That section states, "Subject to the other provisions of this code, on application of a domestic entity or an owner or member of a domestic entity, a court may: (1) supervise the winding up of the domestic entity; (2) appoint a person to carry out the winding up of the domestic entity; and (3) make any other order, direction, or inquiry that the circumstances may require." *Id.* Under section 152.702(a)(3) of the code, "[a]fter the occurrence of an event requiring a winding up of a partnership business," the partnership business may be wound up by, among others, "a person appointed by the court to carry out the winding up under Subsection (b)." *Id.* § 152.702(a)(3). Subsection (b) of section 152.702 states in part, "On application of a partner, . . . a court, for good cause, may appoint a person to carry out the winding up and may make an order, direction, or inquiry that the circumstances require." *Id.* § 152.702(b). Further, section 101.551 of the code provides in part that after an event requiring the winding up of a

[10] The other instances are (1) "when an action has been filed by the attorney general under this chapter to terminate the existence of the entity and it is established that liquidation of the entity's business and affairs should precede the entry of a decree of termination"; (2) "on application of the entity to have its liquidation continued under the supervision of the court"; (3) "if the entity is in receivership and the court does not find that any plan presented before the first anniversary of the date the receiver was appointed is feasible for remedying the condition requiring appointment of the receiver"; and (4) "on application of a member or director of a nonprofit corporation or cooperative association and it [sic] appears the entity is unable to carry out its purposes." *Id.*

limited liability company, the winding up of the company must be carried out by one of three designated actors, one of which is "a person appointed by the court to carry out the winding up of the company under Section 11.054, 11.405, 11.409, or 11.410."[11]  *Id.* § 101.551.

A person may appeal from an interlocutory order of a district court that "appoints a receiver or trustee."  TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(1).  Statutes authorizing appeals from interlocutory orders are strictly construed.  *See Art Inst. of Chicago v. Integral Hedging, L.P.*, 129 S.W.3d 564, 570 (Tex. App.—Dallas 2003, no pet.).  "An interlocutory order that is explicitly appealable under section 51.014 may not be used as a vehicle for carrying other nonappealable interlocutory orders to the appellate court."  *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 627 n.24 (Tex. App.—Fort Worth 2007, pet. denied).

### C. Application of Law to Facts

In his first issue, Spiritas contends the trial court abused its discretion by "appointing a receiver to market and sell the assets of SRE and JSLC" because "Davidoff did not prove and the trial court did not find" any of the statutory requirements for the appointment of a receiver under the business organizations code.  Specifically, in his initial brief in this Court, Spiritas asserts (1) under section 11.401, a receiver for SRE or JSLC can be appointed only as provided for in the business organizations code and (2) there is no evidence in the record as to any of the four requirements of business organizations code section 11.403.  Further, in his reply brief in this Court, Spiritas restates that argument and, additionally, argues the evidence does not support appointment of a receiver under sections 11.404 or 11.405.

Davidoff responds that it was within the discretion of the trial court to "appoint a receiver to wind up a limited liability partnership and a limited liability company, where an event

---

[11] Section 11.409 of the business organizations code is titled "Ancillary Receiverships of Foreign Entities" and section 11.410 is titled "Receivership for All Property and Business of Foreign Entity."  *Id.* §§ 11.409, 11.410.  The parties do not contend either of those sections is applicable in this case.

–14–

requiring winding up occurred and the undisputed evidence shows the equal 50/50 partners/owners are intractably deadlocked." Specifically, according to Davidoff, (1) the business organizations code requires the winding up of SRE and JSLC under the circumstances in this case; (2) "[t]here is no genuine dispute that Davidoff and Spiritas are intractably deadlocked and that no agreement has been or will be reached regarding a winding up plan"; (3) "[a] receiver is needed to conserve and maximize the value of the assets during winding up"; (4) "the trial court was authorized under sections 152.702(a)(3), 101.551, and 11.054 to appoint a receiver to wind up SRE and JSLC"; (5) although section 11.403 does not apply here because the trial court did not appoint a receiver for "specific property," all requirements of that section have been met; (6) Davidoff's affidavit testimony shows a "risk of serious injury to SRE and JSLC"; and (7) at the February 21, 2014 hearing, "Davidoff offered direct testimony concerning the irreparable harm that perpetual deadlock will cause SRE." Additionally, during oral submission before this Court, counsel for Davidoff asserted in part that in light of the "deadlock" between the parties, Davidoff is entitled to a receivership "regardless of whether or not there's a wind up." Specifically, Davidoff's counsel argued in part that "[i]f there is not a wind up, then there is a receivership required under 11.404, a rehabilitative receiver." Further, counsel for Davidoff contended a "threat" of "irreparable injury" was shown by Davidoff's affidavit testimony respecting the letters of intent received by SRE and Michael Davidoff's testimony at the February 21, 2014 hearing.

The record before us does not show what authority the trial court relied upon in appointing the receiver in this case. While Spiritas asserts section 11.401 of the business organizations code is applicable to both entities in question, Davidoff makes no argument respecting that section. *See* TEX. BUS. ORGS. CODE ANN. § 11.401. Pursuant to section 11.401, "[a] receiver may be appointed for a domestic entity or for a domestic entity's property or

business only as provided for and on the conditions set forth in this code." *Id.* The record shows SRE is a Texas limited liability partnership and, according to the parties, JSLC is either a Texas corporation or a "Texas limited liability company." Therefore, we conclude SRE and JSLC are domestic entities. *See id.* § 1.002(18) (defining "domestic entity" for purposes of business organizations code as "an organization formed under or the internal affairs of which are governed by this code"); *see also id.* § 1.008(b) ("The provisions of Title 2 and the provisions of Title 1 to the extent applicable to corporations may be cited as the "Texas Corporation Law."); § 1.008(e) ("The provisions of Title 3 and the provisions of Title 1 to the extent applicable to limited liability companies may be cited as the "Texas Limited Liability Company Law."); § 1.008(f) ("The provisions of Chapters 151, 153, and 154 and the provisions of Title 1 and Chapter 152 to the extent applicable to limited partnerships may be cited as the "Texas Limited Partnership Law."); § 1.008(g) ("The provisions of Chapters 151, 152, and 154 and the provisions of Title 1 to the extent applicable to general partnerships may be cited as the "Texas General Partnership Law."). Accordingly, a receiver may be appointed for SRE and JSLC or their property or business "only as provided for and on the conditions set forth in" the business organizations code. *Id.* § 11.401.

As described above, Davidoff first contends that because "an event requiring winding up occurred," the trial court "was authorized under sections 152.702(a)(3), 101.551, and 11.054 to appoint a receiver to wind up SRE and JSLC." Each of those three sections provides for the appointment of "a person" in certain instances pertaining to the winding up of entities. *See id.* §§ 11.054, 101.551, 152.702(a)(3). However, none of those sections contains the word "receiver" or provides for the appointment of a "receiver." Even assuming without deciding the record shows the occurrence of an "event requiring winding up," we cannot agree with Davidoff

–16–

that the appointment of a receiver was authorized by any of those three sections. *See id.* § 11.401.

Second, Davidoff asserts that even if no event requiring a winding up occurred, (1) the requirements of section 11.403 have been met and (2) appointment of a rehabilitative receiver was proper in this case pursuant section 11.404. As described above, section 11.403 pertains to appointment of a receiver for "specific property" and section 11.404 pertains to appointment of a receiver to "rehabilitate" a domestic entity. *See id.* §§ 11.403, 11.404. The trial court stated in the order in question that it "finds that it is in the best interests of both SRE and JSLC to have a Receiver appointed in order to wind up SRE and JSLC, including liquidating SRE's assets, paying its debts, and distributing the remaining proceeds, if any, to Davidoff and Spiritas in accordance with their respective interests." Further, the trial court stated it "specifically empowers the Receiver to take all steps necessary to market and sell the assets of JSLC and SRE—including, but not limited to, the ranch property." Because the order in this case does not show appointment of a receiver for "specific property," we conclude section 11.403 is inapplicable. *See id.* § 11.403.

As to section 11.404, that statute requires a showing that (1) at least one of the circumstances in subsection (a) exists and (2) all of the requirements in subsection (b) have been satisfied. *See id.* § 11.404. As described above, Davidoff asserts in part that the parties are "deadlocked" and that the record shows a "threat" of "irreparable injury." We construe Davidoff's argument to assert that provision (B) of subdivision 11.404(a)(1) is applicable, i.e. "the governing persons of the entity are deadlocked in the management of the entity's affairs, the owners or members of the entity are unable to break the deadlock, and irreparable injury to the

–17–

entity is being suffered or is threatened because of the deadlock."[12]  *Id.* § 11.404(a)(1)(B). Further, according to Davidoff, the evidence supporting a "threat" of "irreparable injury" consists of (1) Davidoff's testimony in her affidavit respecting the letters of intent received by SRE and (2) Michael Davidoff's testimony at the February 21, 2014 bond hearing.

The challenged order appointing a receiver in this case is dated January 2, 2014. Therefore, the February 21, 2014 testimony of Michael Davidoff is not part of the record upon which this Court's conclusions in this appeal are to be based.  *See J.N. McCammon, Inc.*, 52 S.W.2d at 55; *Tanner*, 274 S.W.3d at 323 n.22; *Congleton*, 2012 WL 1249406, at *6 n.3.

As to Davidoff's affidavit testimony respecting the letters of intent, Davidoff asserts in her brief in this Court,

> The facts demonstrating the risk of serious injury to SRE and JSLC are undisputed.  Although market demand for large tracts of property in the vicinity of Spiritas Ranch has significantly increased in recent months and SRE has received two Letters of Intent ("LOIs") regarding the property, the partners' deadlock has prevented SRE from taking a single step to respond to the LOIs or to take advantage of lucrative opportunities to market the property.  Spiritas has flatly refused to do anything to investigate the LOIs or any alternative options for marketing and sale of the property.

In support of that argument, Davidoff cites the portion of her affidavit described above.

Spiritas asserts in part, "At the hearing on her motion to appoint a receiver, Davidoff offered no testimony, analysis, or even argument that SRE's property is in danger of materially depreciating in value, or that any developer's interest in the property will somehow disappear, if the letters of intent are not pursued or marketing efforts are not immediately undertaken."

Even assuming without deciding that the parties are "deadlocked" in the management of the affairs of SRE and JSLC, we cannot agree with Davidoff that her testimony respecting the letters of intent demonstrates a threat of "irreparable injury" to the entities in question as a result

---

[12] The parties do not address any other provisions of subsection 11.404(a).  *See id.* § 11.404(a).

of the purported deadlock. On this record, we conclude that at the time of the order in question, there was no evidence before the trial court of an "irreparable injury" being "suffered" or "threatened." Therefore, the appointment of a receiver pursuant to section 11.404 is not supported by the record. *See* TEX. BUS. ORGS. CODE ANN. § 11.404.

Finally, we address section 11.405, which pertains to the appointment of a receiver to "liquidate" a domestic entity. *Id*. § 11.405. As described above, section 11.405 is applicable in the five circumstances listed in subsection 11.405(a) if the requirements of subsection 11.405(b) are also satisfied. *See id*. § 11.405. Although Spiritas contends generally that the requirements of section 11.405 have not been satisfied in this case, neither party specifically addresses the circumstances listed in subsection 11.405(a). *Id*. The record shows four of those circumstances are inapplicable. *See id*. § 11.405(a)(1)–(3), 11.405(a)(5). The one remaining circumstance is "on application of a creditor of the entity if it is established that irreparable damage will ensue to the unsecured creditors of the domestic entity as a class, generally, unless there is an immediate liquidation of the property of the domestic entity." *Id*. § 11.405(a)(4). Even assuming without deciding the record shows a trust controlled by Davidoff is a "creditor" of SRE, subdivision 11.405(a)(4) requires evidence that "irreparable damage" will ensue in the absence of an immediate liquidation. *See id*. We concluded above the record does not show that at the time of the order in question, the trial court had before it any evidence of an "irreparable injury" being "suffered" or "threatened." *See id*. § 11.404(a)(1)(B). The parties do not address whether "irreparable damage" is distinguishable from "irreparable injury" and we have found no authority to support any difference between those terms. *Cf. Fite v. Emtel, Inc*., No. 01-07-00273-CV, 2008 WL 4427676, at *5 (Tex. App.—Houston [1st Dist.] Oct. 2, 2008, pet. denied) (mem. op.) (using terms "irreparable injury" and "irreparable damage" without distinction in analysis of whether evidence supported appointment of receiver under predecessor to section

11.404).  Accordingly, we conclude the record does not show any evidence, at the time of the order in question, of "irreparable damage" that "will ensue."  TEX. BUS. ORGS. CODE ANN. § 11.405(a)(4).  On this record, we conclude further the appointment of a receiver pursuant to section 11.405 is not supported by the evidence.  *Id*.

We decide in favor of Spiritas on his first issue.

### III. CONCLUSION

We decide Spiritas's first issue in his favor.  We need not reach his second issue.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(1).

We reverse the portion of the trial court's order appointing a receiver for SRE and JSLC and remand this case to the trial court for further proceedings consistent with this opinion.

/ Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

140068F.P05

–20–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEVEN SPIRITAS, INDIVIDUALLY
AND AS TRUSTEE OF THE SPIRITAS SF
1999 TRUST; SPIRITAS RANCH
ENTERPRISES, LLP; AND J. SPIRITAS
LAND & CATTLE COMPANY, Appellants

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-08326.
Opinion delivered by Justice Lang, Justices
Bridges and Evans participating.

No. 05-14-00068-CV          V.

SUSAN DAVIDOFF, INDIVIDUALLY
AND AS TRUSTEE OF THE SPIRITAS SC
1999 TRUST, Appellee

In accordance with this Court's opinion of this date, the portion of the trial court's order appointing a receiver as to Spiritas Ranch Enterprises, LLP and J. Spiritas Land & Cattle Company is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant STEVEN SPIRITAS, INDIVIDUALLY AND AS TRUSTEE OF THE SPIRITAS SF 1999 TRUST, recover his costs of this appeal from appellee SUSAN DAVIDOFF, INDIVIDUALLY AND AS TRUSTEE OF THE SPIRITAS SC 1999 TRUST. The clerk of the district court is directed to release the full amount of the cash deposit in lieu of supersedeas bond to the person who made the deposit.

Judgment entered this 27th day of February, 2015.