In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00172-CV
_____

IN RE COMMITMENT OF TOMMY DALE SELLS SR.

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 14-06-06686 CV

MEMORANDUM OPINION

The State filed a petition to commit Tommy Dale Sells Sr. (Sells or Appellant) as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2015) (SVP statute). A jury found that Sells is a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. Sells timely filed an appeal.

BACKGROUND

At the time of trial, Appellant was serving a fifteen-year sentence for two sexual offenses: indecency with a child and aggravated sexual assault. Appellant

1

testified that his six-year-old grandchild was the victim of the offenses for which he was currently serving time and he pleaded guilty to the offenses.

Appellant testified that in the early 1970s, he pleaded guilty to stealing a car in Louisiana. He also agreed that he was convicted in Texas in 1977 on a charge of unauthorized use of a motor vehicle, for which he was given probation. He explained that he was later arrested on a DWI charge, and after he escaped from city jail, his probation was revoked and he went to prison. He further stated he received a five-year sentence on a burglary charge in the early 1980s.

According to Appellant, in approximately 1986, he was convicted in California for lewd or lascivious acts with a child for acts against his daughter. He denied the allegations but stated that four charges for sexual offenses were also brought against him for various acts with his two boys and his daughter. Appellant stated that he was convicted of indecency with a child and given five years' probation for the offenses against his own children.

Appellant explained that he has amputations of both legs and his left arm as the result of a train/pedestrian accident that occurred around 1986. He also agreed that he is an alcoholic and he had been arrested "maybe three times" for DWI. He also testified that he was previously convicted of criminal mischief. Appellant also testified that he was arrested in California for shoplifting and that he resisted the

police when they pulled him from his wheelchair to place him in the patrol car. He received a deferred sentence as a result of this incident.

## EXPERT BASIS EVIDENCE

In his first issue on appeal, Appellant argues that the trial court erred by admitting "highly and unfairly prejudicial details of the sexual offenses Appellant was convicted and accused of" that the State's expert considered as basis evidence. Appellant's brief acknowledges that this Court has repeatedly held that an expert in an SVP commitment proceeding may testify regarding evidence of the defendant's prior offenses provided the expert considered such evidence in forming an opinion and, where requested, the trial court gives a limiting instruction. *See, e.g.*, *In re Commitment of Day*, 342 S.W.3d 193, 197-99 (Tex. App.—Beaumont 2011, pet. denied); *see also* Tex. R. Evid 705(d). However, Appellant asserts that the evidence shows that the jury treated the basis evidence, which would normally be inadmissible as hearsay, for the truth of the matter asserted, in contravention to the court's limiting instruction.

During the trial, the State's expert witness, Dr. Sheri Gaines, testified that among the evidence she considered in forming her expert opinion were records of Appellant's prior offenses. Gaines then testified that Appellant's first sexual offenses occurred in 1986 in California. When the State asked who the victim or

3

victims of these offenses were, Appellant objected that the evidence was hearsay and improper under Rule 403. The court overruled the objections and gave a limiting instruction. Gaines then testified that Appellant's children were his victims in the 1986 offenses and Gaines also testified as to how the offenses occurred. Gaines also testified that the four charges resulted in no convictions. Appellant asked for a running objection as to the basis evidence, which the court allowed.

Later during the trial, Appellant's expert, Dr. Roger Saunders, testified that he also considered records of the prior offenses among other evidence in forming his expert opinion as to whether Appellant has a behavioral abnormality. On cross-examination, Dr. Saunders also agreed to certain details of the sexual offenses.

Following the trial, Appellant filed a motion for new trial based in part upon the argument that "there was material jury misconduct[]."Specifically, Appellant asserted that one of the jurors, B.M., had posted comments to a Houston Chronicle online article after the trial and Appellant argued that B.M.'s comments "suggest an outside influence, originating from a source other than the jurors themselves." Appellant attached an affidavit of another juror, N.G., who attested that the person who posted the comments to the news article had served on the jury with N.G.

At a hearing on the motion for new trial, Appellant questioned B.M. and B.M. admitted he had posted comments following the online publication of the

4

Chronicle's article about the trial. B.M.'s complained-of comments were admitted into evidence:

> I was on this jury and beside from the distraction of [the news reporter] consistently shaking her head no every time the State spoke, justice was served for the People of Texas and the family members of this monster. Family members, that he sodomized while he was an amputee AND before! It doesn't take arms or legs to convince a 6 six year old girl OR BOY to keep quiet, and/or threaten them with death amongst other things. The only thing I regret from that trail [sic], is not telling the judge or bailiff to kick [the news reporter] out for distracting the jury and justice system in general. If [the news reporter] had show [sic] up on time to the trial and not have such a determination to hang a judge simply because he's conservative maybe she would have paid more attention to the facts of the one question we were to answer in this case. "Do you find beyond a reasonable doubt that TOMMY DALE SELLS, SR. is a sexually violent predator?" HELL YEAH I DO!!! BTW Where's her mention that this SOB was convicted of molesting his daughter as well? The charges of molesting his two sons and then having them perform sexual acts on each other? Convictions for 3 DWIs? Conviction of burglary? Conviction of assaulting a police officer? Evading a police officer? Escaping from jail?
>
> . . . .
>
> . . . Another fact that [the news reporter] decided to omit was the this [sic] scumbag used an electric wheelchair, steel hook as a prosthetic, and has no issue moving himself from the wheelchair to bed or a chair (OR move his six year old grand[child] to a table top to [] and then move her to the couch to fully rape her) so I don't know if it'd be that easy.
>
> . . . .
>
> . . . I'm sure that if you got your "facts" from sources like the HC you would come to the conclusion . . . . However, I am a focused

person and on this will be sticking to the topic of what I observed in that trial including [reporter's name]. Thank you for finding it interesting.

At the hearing, B.M. agreed he regarded Appellant as a "monster[.]" B.M. further testified that he came to this conclusion after having heard "everything in the case[]" and after "both sides closed their case[.]"

During examination of B.M. by Appellant, the court stated that "everything so far that you are asking is related to post-jury conduct." And at the conclusion of questioning, the court explained:

> Counsel, I'm looking for some law to support outside influence. I have told you that. I have looked at your motion. Your motion said that there was an affirmative blatant prejudice supporting his failure to respond. And thus far, you have no evidence to support that. Now, that's the basis of your motion. I have read it. I have read the response. I read the statement of fact that I have got of this. I know the questions that were asked. I'm ready to proceed. I'm going to have to sustain Counsel's objection. I am looking at what you say you have. I am asking you to just go forward with it.

The court denied the motion for new trial without entering findings of fact or conclusions of law.

On appeal, Appellant challenges the trial court's admission of Dr. Gaines's testimony concerning the details of previous offenses, but Appellant does not appeal the denial of his motion for new trial. We review the admission of evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A trial

court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). And we consider a trial court's ruling in light of what was before the court at the time the ruling was made. *See Stephens Cty. v. J.N. McCammon, Inc.*, 52 S.W.2d 53, 55 (Tex. 1932) ("When an appellate court is called upon to revise the ruling of a trial court it must do so upon the record before that court when such ruling was made."); *Spiritas v. Davidoff*, 459 S.W.3d 224, 231 (Tex. App.—Dallas 2015, no pet.) (same); *Congleton v. Shoemaker*, Nos. 09-11-00453-CV, 09-11-00654-CV, 2012 Tex. App. LEXIS 2880, at **15-16 n.3 (Tex. App.—Beaumont April 12, 2012, pet. denied) (mem. op.) ("Our review . . . is limited to the record before the trial court at the time of its ruling.").

We have repeatedly held that a trial court does not err in admitting basis testimony by an expert in an SVP commitment proceeding regarding evidence of the defendant's prior offenses provided the expert considered such evidence in forming her opinion and, where requested, the court gives a limiting instruction. *See, e.g.*, *Day*, 342 S.W.3d at 197-99; *see also* Tex. R. Evid 705(d). We presume the jury followed the trial court's limiting instruction and the jury charge. *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex.

2009) ("The jury is presumed to have followed the court's instructions."); *Day*, 342 S.W.3d at 199 ("We also presume the jury followed the trial court's limiting instruction.").

Appellant argues that the online comments from the juror, B.M., are evidence that "this case clearly shows that one . . . juror could not and did not[]" follow the court's limiting instruction. As noted by the trial court at the hearing, B.M.'s online comments and testimony at the hearing relating thereto "related to post-jury conduct[,]" B.M.'s online comments were not before the trial court when it made the decision during the trial to admit Dr. Gaines's testimony concerning the basis of her opinions. We conclude that the trial court did not abuse its discretion in admitting Dr. Gaines's testimony, and we overrule Appellant's first issue on appeal.

## JURY ARGUMENT

In his second issue, Appellant argues that the trial court committed reversible error in allowing the State to make an improper jury argument that "the hearsay records in this case were reliable and authentic in contravention [to] the hearsay limiting instruction." According to the State, because both experts characterized the records as official or reliable, the State's closing argument constituted a permissible summary of the evidence.

Appellant complains about the following portion of the State's closing argument:

> [State's attorney]: . . . Now, something may be hearsay but still may be quite reliable. Both doctors told you that part of the methodology in this type of evaluation is to review records. That's -- both doctors agree that that's standard and that you take these official records as valid, you know, as reliable.
>
> [Defense attorney]: Objection, Your Honor, improper characterization of the records as being official.
>
> THE COURT: As what?
>
> [Defense attorney]: As being official.
>
> THE COURT: All right. Rephrase, please.
>
> [State's attorney]: Well, Dr. Gaines told you that she looks at official records. All right? And the fact that they look at records that are hearsay doesn't mean that the records are not reliable. That's why they rely on these records, is because that's reliable information that was generated at the time of the events that the records deal with. If you call 15 years after the fact and say tell me what happened you're not going to get, you know, as reliable of a -- a report as the report that was made at the time.
>
> So the fact that there are some documents that are hearsay doesn't mean the documents are not reliable. Both doctors told you that's part of the standard methodology of doing these evaluations.
>
> [Defense attorney]: Objection, Your Honor, based on the credibility of the witnesses as far as the authentication of the documents, are they reliable and they're hearsay documents.
>
> THE COURT: At this point, Counsel, I'll overrule the objection as I understand it.

During the trial, Dr. Gaines, the State's expert, testified that she reviewed the pen packet, prison records – which included education and medical records – police records, and depositions of Appellant, Dr. Saunders, and herself. Gaines testified that reviewing such records is part of the standard methodology for experts who do this type of evaluation and that she does not independently verify these records because "[t]hese records are official records. These are records that were generated contemporaneously, some of them decades ago. And I rely on this information to be official."

Dr. Saunders, the expert for Appellant, also testified that, in forming his opinion, he reviewed police records, prison records, medical records, reports provided by other mental health professionals, and depositions of Appellant, Dr. Gaines, and himself. Dr. Saunders also explained that such records are typically relied on by experts in his field doing this type of evaluation. Dr. Saunders agreed that he considered convictions of Appellant as "facts of law." When asked about a particular report from the United States Department of Justice that he had reviewed, Dr. Saunders said, "I have no reason to doubt the credibility of the document." When asked about the records in general, Dr. Saunders agreed that he "largely[]" took the information in the records as true and also said, "I didn't contest them for their origin or veracity." Both experts agreed that the details of the

10

criminal offenses were important in coming to their conclusions of whether he has a behavioral abnormality. A copy of the pen packet was admitted into evidence, which included information pertaining to the defendant's convictions in 1978, 1980, and 2000.

During Dr. Gaines's testimony, the trial court gave a limiting instruction to the jury at the request of the defense, which included the admonition that "Such hearsay is admitted only for the purposes of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted." The defendant's attorney emphasized the hearsay instruction during his closing argument. And the jury charge itself included the following instructions:

> You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. . . .
>
> . . . .
>
> Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Certain hearsay information contained in records reviewed by the experts was admitted before you through expert testimony. Such hearsay was admitted only for the purpose of showing the basis of the experts' opinion and cannot be considered as evidence to prove the truth of the matter asserted.

To obtain a reversal based on an error during jury argument, a party must show (1) an error occurred, (2) that was not invited or provoked, (3) that was

preserved by proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. *In re Commitment of Eeds*, 254 S.W.3d 555, 560 (Tex. App.—Beaumont 2008, no pet.) (quoting *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979)). Generally speaking, most improper arguments may be cured by an instruction to disregard. *See Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 680 (Tex. 2008); *Newby v. State*, 252 S.W.3d 431, 438-39 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).

"Generally, proper jury argument falls into one of these areas: (1) a summation of the evidence, (2) a reasonable deduction from the evidence, (3) an answer to an argument made by opposing counsel, or (4) a plea for the enforcement of a law." *In re Commitment of Dodson*, 434 S.W.3d 742, 751 (Tex. App.—Beaumont 2014, pet. denied); *see generally* Tex. R. Civ. P. 269(b), (e). Arguments that are presented to juries in summation should be confined "strictly to the evidence and to the arguments of opposing counsel." Tex. R. Civ. P. 269(e).

In this matter, both experts testified that they relied upon the same records and that the records they relied upon were typically used by experts in their fields making this type of evaluation. Both experts made comments during their testimony concerning the veracity of records they reviewed. The trial court could

have reasonably concluded that the complained-of portion of the State's closing argument was a permissible summation of the evidence. Additionally, the court gave a limiting instruction at trial, and a limiting instruction was also included in the jury charge. We assume the jury followed the limiting instruction. *Day*, 342 S.W.3d at 199. We overrule Appellant's second issue on appeal.

COMMITMENT QUESTIONS DURING VOIR DIRE

In Appellant's third issue, he argues the trial court committed reversible error by allowing the State to ask improper commitment questions during voir dire and that the improper questions substantially affected the jury's verdict. The first question to the venire of which Appellant complains asked if they would have a problem if an expert considered records generated by someone else in evaluating whether someone has a behavioral abnormality. The second question of which Appellant complains asked if the venire would have a problem if an expert was paid. Appellant argues that the questions were improper because they asked "how the venire persons would resolve the credibility of a witness based on particular facts concerning the witness." Appellant also argues that

> The State received the benefit of their ill-gotten [] knowledge to use peremptory strikes on the two jurors who would have had an issue with [an] expert relying on records of others and being paid. The State was also able to determine that no one else on the panel had any issues related to their improper commitment questions and secure a jury,

13

who for the most part, expressed no issue with their improper inquiries.

Appellant then argues that, because a civil commitment case such as this is "a classic battle of the experts[,]" credibility of the witnesses is particularly important, and through the use of improper commitment questions, the State was able "to remove potential jurors who would have evaluated the expert testimony on items the State found troublesome in comparison to [the defendant's] expert witness." Appellant argues that this substantially affected the jury's verdict and caused the rendition of an improper verdict.

A person is disqualified from jury service if he "has a bias or prejudice in favor of or against a party in the case[.]" *See* Tex. Gov't Code Ann. § 62.105(4) (West. 2013). "Voir dire examination protects the right to an impartial jury by exposing possible improper juror biases that form the basis for statutory disqualification." *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 749 (Tex. 2006) (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984)). During voir dire, the parties and the court may pose questions to potential jurors to discover biases or prejudices. *Id.* at 750. We review a trial court's rulings concerning voir dire for an abuse of discretion. *In re Commitment of Hill*, 334 S.W.3d 226, 228-29 (Tex. 2011); *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex. 1989); *In re Commitment of Larkin*, 161 S.W.3d 778, 780 (Tex. App.—

Beaumont 2005, no pet.). "[A] court abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges." *Babcock*, 767 S.W.2d at 709.

"Commitment questions 'commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact.'" *Lydia v. State*, 109 S.W.3d 495, 498 (Tex. Crim. App. 2003) (quoting *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001)).[1] "The substance of a question, not its form, determines whether it probes for prejudices or previews a probable verdict." *Vasquez*, 189 S.W.3d at 757-58. The two-step inquiry to determine whether a voir dire question calls for an improper commitment asks:

> . . . (1) Is the question a commitment question, and (2) Does the question include only those facts that lead to a valid challenge for cause? *Standefer*, 59 S.W.3d at 182. If the answer to the first question is "yes" and the answer to the second question is "no," then the question asked is an improper commitment question. *Id.* at 182-183.

*Lydia*, 109 S.W.3d at 497-98. Not all commitment questions are improper. *See, e.g.*, *Hill*, 334 S.W.3d at 228-29 (commitment question was not improper because "[t]he 'commitment' that the potential jurors were asked to make was legislatively

---

[1] "[T]he statutory standards for bias or prejudice in civil and criminal cases are the same, [and] voir dire standards should remain consistent." *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 753 (Tex. 2006).

mandated: they were asked whether they would require the state to prove both elements of a conjunctive statute."). We consider the voir dire as a whole when determining whether a question constitutes an improper commitment question. *See Halprin v. State*, 170 S.W.3d 111, 119 (Tex. Crim. App. 2005); *In re Commitment of Robertson*, No. 09-09-00307-CV, 2010 Tex. App. LEXIS 7421, at *18 (Tex. App.—Beaumont Sept. 9, 2010, pet. denied) (mem. op.).

During voir dire, while addressing "the credibility and testimony of . . . an expert psychiatrist or psychologist," the State asked the venire "Would anyone have a problem with a doctor doing this type of evaluation looking at records that were generated by someone else?" Appellant objected on the basis that the question called for improper commitment, and the court overruled the objection. After additional questions to the venire, the State asked "Would anyone have an issue with an expert witness being compensated for the time that he or she spent doing an evaluation and testifying?" Appellant objected on the basis that the question called for an improper commitment, and the State responded that "I'm not asking what their verdict would be on that set of facts." The court overruled the objection.

Appellant contends that the two complained-of questions by the State to the venire were commitment questions because they asked the potential jurors to

16

resolve an issue in a certain way after hearing a particular fact. Specifically, Appellant argues that "[t]he issue to be resolved based on these particular facts are [sic] the same, the credibility of the expert witness." After reviewing the whole record, we cannot say that the trial court erred in overruling the objections. The trial court could have reasonably concluded that the questions were proper "attempts to discover a venire[person]'s preexisting bias or prejudice." *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005). Moreover, in this case, both parties' experts relied on records or documents generated by others and both parties' experts were paid. Therefore, any possible bias these questions might have revealed would not necessarily benefit or prejudice one party over the other. On this record, we conclude that the trial court did not abuse its discretion in allowing the voir dire questions. Issue three is overruled.

REBUTTAL WITNESS

In his fourth issue, Appellant argues that the trial court erred by allowing the State to call Dr. Co Nguyen (Nguyen or Dr. Nguyen), a treating physician, as a rebuttal witness to testify regarding the physical mobility and capacity of Sells. Appellant explains that the State failed to disclose Dr. Nguyen during discovery and did not establish good cause or lack of unfair surprise or prejudice for the failure to timely designate Dr. Nguyen as a witness.

At trial, when the State called Dr. Nguyen to testify during its case in chief, Appellant objected on the basis that the State had not timely designated him as a person with knowledge or as a potential witness or expert witness and also objected on the basis of doctor-patient privilege under Rule 509 of the Texas Rules of Evidence.[2] The State responded that under Rule 193.6 of the Texas Rules of Civil Procedure, "the witness can still testify if not timely identified if it would not unfairly surprise or unfairly prejudice the other party." The State further explained that calling Dr. Nguyen should not create surprise because Nguyen was the defendant's treating physician, an affidavit by Dr. Nguyen was attached to a motion for sanctions[3] that the State had filed in this case, and Appellant knew "about this witness from the medical records." The State further explained that Dr. Nguyen was a rebuttal witness and that "under the docket control order the requirements about identifying persons with knowledge of relevant facts does not include rebuttal witnesses[.]"The State also explained that it intended to limit questioning of Dr. Nguyen to "issues that were brought up during the cross-examination of Dr. Gaines about Mr. Sells' physical condition."

---

[2] In this section of the Memorandum Opinion, we address only Appellant's argument and issue relating to the alleged failure to disclose Dr. Nguyen. We address Appellant's argument concerning doctor-patient privilege in a subsequent section of our opinion.

[3] The motion for sanctions is not included in the appellate record.

The court asked whether Appellant had filed any requests for disclosure. Appellant replied that he had; and, the State responded that it sent responses to the request for disclosure but the State had not identified Dr. Nguyen as a person with knowledge of relevant facts. The court allowed the attorneys time to prepare argument on the objections and told Dr. Nguyen he could leave but that he should be available to return. The court also stated it would address arguments the following morning "before Dr. Saunders testifies; however, if we use a rebuttal witness, then he cannot be expected to know what it is that he's totally related to until Dr. Saunders testifies. It's a very interesting conundrum."

The following morning and after the State rested, Dr. Saunders, the defendant's expert witness testified, after which the State again called Dr. Nguyen as a rebuttal witness. The court asked whether Nguyen was "a rebuttal witness purely[]" and the State agreed. The State further explained that Dr. Saunders had testified regarding Sells's mobility and that the State intended to ask Dr. Nguyen "to address that point[]" and to ask about "mobility issues, heart disease, his diabetes or the current status of that." Appellant responded that Dr. Saunders was not the only witness to testify concerning the defendant's mobility issues but that the State's own expert also addressed this issue and that because the State had obtained affidavits from Dr. Nguyen prior to trial, the State could not argue that his

19

testimony could not have been anticipated. Finally, the State responded that the "the penalty for not identifying someone is they can't testify except for a rebuttal fact witness." The State argued that Dr. Nguyen would be a "rebuttal fact witness[,]"and that Dr. Nguyen's testimony would "rebut some claims that were made in Dr. Saunders' testimony[]" concerning the defendant's mobility. The court asked the parties whether Dr. Saunders addressed the defendant's mobility, diabetes, and physical conditions in his deposition, and the parties agreed that he addressed Appellant's physical condition.[4] The court allowed Dr. Nguyen to testify solely as a rebuttal witness, explaining as follows:

> . . . I have written down up here, listening to the discussion and asking questions and someone has never really clarified for me the -- the information anymore in Dr. Saunders's earlier testimony. I had -- I did not use the word "lift." I had the issues of transfer, of mobility. The lifting is a physical condition, to lift. The heart disease is a physical issue relating to mobility probably and lifting and for those limited purposes I will allow you the rebuttal witness but not more.
> . . . .
>
> . . . The -- I will repeat generally and I'm not trying to craft your questions. The area of inquiry has to do with mobility, moving in and out of a room, transferring oneself, transferring to bed, that global area. I'm not trying to typecast, but that was an issue about his capacity. His capacity also deals with the ability to lift. And the -- also the other capacity would be the heart disease would be impacting the physical capacity to do these things. Okay?

---

[4] The appellate record does not include deposition transcripts of any witness.

Dr. Nguyen then testified that Appellant is able to move about in his wheelchair without assistance and he moves from his wheelchair to a bed with his "remaining arm." Dr. Nguyen said that he had not seen Appellant lifting objects. Nguyen also testified that Appellant does not have any issues with his heart that affect his mobility.

Rule 193.6 of the Texas Rules of Civil Procedure provides that when a party fails to timely identify a witness, that party may not offer the testimony of that witness unless the court finds that (1) there was "good cause" for the failure to timely identify, or (2) the failure "will not unfairly surprise or unfairly prejudice the other [party]." Tex. R. Civ. P. 193.6(a). The burden of demonstrating good cause or the lack of unfair surprise and unfair prejudice is on the party seeking to call the unidentified witness. *Id.* 193.6(b). Additionally, a trial court's finding of good cause or the lack of unfair surprise and unfair prejudice must be supported by the record. *Id.*

Under Rule 192.3(d), a party is not required to disclose in discovery the identity of "rebuttal or impeaching witnesses the necessity of whose testimony cannot reasonably be anticipated before trial." *Id.* 192.3(d). The Texas Supreme Court has held that the fact that a nondisclosed witness was called only as a rebuttal or impeachment witness may under certain circumstances constitute good

21

cause for the failure to disclose. *See Aluminum Co. of Am. v. Bullock*, 870 S.W.2d 2, 4 (Tex. 1994) (holding under prior rule that party met its burden of showing good cause for failure to identify rebuttal expert due to material and unanticipated change in testimony of opposing expert). However, the burden remains on the party seeking to call the undisclosed witness, and the record must still demonstrate good cause. *See id.*; *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 916-17 (Tex. 1992) (op. on reh'g). The mere fact that a witness is called "in rebuttal" does not mean that the witness does not have to be disclosed. *See, e.g.*, *Alvarado*, 830 S.W.2d at 916 (a "tactical decision" prior to trial to call an undisclosed witness on rebuttal was not good cause for failing to comply with discovery); *Melendez v. Exxon Corp.*, 998 S.W.2d 266, 276 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (trial court did not err in excluding evidence of rebuttal witness for nondisclosure). A rebuttal witness should be disclosed if the need to call that witness reasonably should have been anticipated. *Moore v. Mem'l Hermann Hosp. Sys., Inc.*, 140 S.W.3d 870, 875 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

The trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion when it acts without regard to the guiding rules or principles governing the admission of evidence, or if its decision to admit evidence

22

is shown to have been arbitrary or unreasonable. *See Downer*, 701 S.W.2d at 241-42. A party seeking to reverse a judgment based on evidentiary error must prove that the error probably resulted in an improper judgment. Tex. R. App. P. 44.1; *see also Interstate Northborough P'Ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). The complaining party must show that the judgment turned on the particular evidence that was excluded or admitted. *Interstate Northborough P'ship*, 66 S.W.3d at 220. In making this determination, we review the entire record from the proceedings below. *See Alvarado*, 897 S.W.2d at 754.

Assuming without deciding that the State did not make its required showing and that admitting Nguyen's testimony was in error, Appellant has not shown that the judgment turned on the particular evidence excluded or admitted. *See Interstate Northborough P'ship*, 66 S.W.3d at 220; *Alvarado*, 897 S.W.2d at 753-54. In his appellate brief, Appellant asserts a conclusory statement that he "was harmed by [Nguyen's] testimony and that harm caused the rendition of an improper verdict." However, Appellant fails to explain how the testimony in question affected the judgment.

Dr. Gaines testified that the defendant's mobility was "a little bit less" than it was when he was charged with sexual offenses in 2000. She also testified that his medical diagnoses

> . . . do not alter [her] opinion. Mr. Sells' major medical problem is that he doesn't have two legs and he doesn't have an arm. That's his major impairing physical condition. That physical condition was present when he offended against [his grandchild] in 2000. That physical condition was present when he assaulted two police officers, resisted arrest, and burglarized. . . .

Dr. Saunders testified that Sells

> . . . has had limitations in his behavior, in his ability to do certain things or perform certain things physically, that there has -- for instance, he can -- he can no longer lift things and has more difficulty ambulating or what we refer to as transfer from, for instance, his -- his chair to his bed. . . .

Based on the record as a whole, we cannot say that Dr. Nguyen's testimony misled the jury and probably resulted in an improper verdict. We overrule the appellant's fourth issue.

PHYSICIAN-PATIENT PRIVILEGE

In his fifth issue, Appellant argues that the trial court erred by allowing his treating physician, Dr. Nguyen, to testify because his physician's testimony was protected as privileged under Texas Rule of Evidence 509. The State argues that Appellant extinguished the physician-patient privilege by putting his own medical condition at issue in his defense and that "[t]he Rules of Evidence and the

24

offensive use doctrine both allowed the State to call Sells's treating physician to rebut the claims Sells presented regarding the status of his health and his mobility."

When the State first called Dr. Nguyen as a witness, Appellant objected on the basis of Rule 509 of the Texas Rules of Evidence. In response, the State explained that

> . . . there is, of course, an exception under Texas Rule of Evidence 509, subsection (e)(4), that applies to communication of medical records that are relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any part relies upon the condition as a part of the party's claim or defense. I think pretty clearly the defense in the questions that were asked of Dr. Gaines on cross-examination, through statements made in opening statement has asserted in this case that Mr. Sells' physical condition is part of their defense that he does not have a behavioral abnormality. Therefore, the physician/patient privilege would not apply to questions about his physical condition that counsel has brought up in this proceeding.
> My intent is to really limit my questions of Dr. Nguyen to issues that were brought up during the cross-examination of Dr. Gaines about Mr. Sells' physical condition. And so it's our position that this falls under an exception to the physician/patient privilege under the Rules of Evidence. [5]

The State also argued that, under the offensive use doctrine,

> . . . a party may not assert a privilege in order to withhold evidence which would materially weaken or defeat the asserting

---

[5] At trial, the State also argued that under section 841.142 of the Texas Health and Safety Code, the attorney representing the State can exchange information with the Texas Department of Criminal Justice and a prisoner's consent is not required for the exchange of information under this section of the statute. *See* Tex. Health & Safety Code Ann. § 841.142 (West Supp. 2015).

25

party's claim. Sort of if you're going to bring it up, then try to use the privilege to prevent the other side from fairly addressing the issue, that's another exception to the physician/patient privilege.

The court overruled Appellant's objection and permitted a running objection on the basis of privilege.

Dr. Nguyen testified that he is a board-certified family physician and that he has been the treating physician of Appellant in prison. According to Dr. Nguyen, Appellant moves from his wheelchair to a bed with his "remaining arm[]" and he is able to move around generally in his wheelchair without assistance. Dr. Nguyen testified that he had not seen Appellant lifting objects, that a stress test of Appellant in 2008 was "negative for any ischemia[]," and that Appellant does not have any issues with his heart that affect his mobility.

According to Appellant, as the result of a train-pedestrian accident, the Appellant had amputations of both legs and of his left arm. Dr. Gaines considered the Appellant's medical condition, including his amputations, in determining whether Appellant has a behavioral abnormality. Dr. Gaines noted that Appellant's mobility had declined over time. But, she also testified that "Mr. Sells has done a lot of really bad things as a triple amputee[]" and that his medical diagnoses do not alter her overall opinion.

Dr. Saunders testified that he regarded Appellant's health status and his resultant dependence on others as "a protective factor[]"and that Appellant's medical issues operate as "limitations in his behavior[]" that put him at "less risk for being able to act out and [at] a greater risk to become more dependent on others[.]" Saunders explained that Appellant has become more dependent on others because of his health issues, and "he's less likely to jeopardize that in the future" and "he is going to be more protective of himself" in order to have access to services. On cross-examination, however, Dr. Saunders agreed that Appellant has committed both sexual and nonsexual offenses as a triple amputee.

Under the general rule, confidential communications between a physician and patient are privileged and may not be disclosed. Tex. R. Evid. 509(c); *Mutter v. Wood*, 744 S.W.2d 600 (Tex. 1988). The patient or his representative may claim the privilege. Tex. R. Evid. 509(d). An exception to the general rule applies where "any party relies on the patient's physical, mental, or emotional condition as a part of the party's claim or defense and the communication or record is relevant to that condition." *Id.* 509(e)(4). In order for this exception to apply, two conditions must be present: (1) the evidence sought to be admitted must be relevant to the condition at issue; and (2) the condition must be relied upon as part of a party's claim or defense, "meaning that the condition itself is a fact that carries some legal

27

significance." *R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994) (orig. proceeding). Mere relevance to a claim or defense is not enough: "to fall within the litigation exception to the privilege, the condition itself must be of legal consequence to a party's claim or defense." *Id.*; *In re Doe*, 22 S.W.3d 601, 609 (Tex. App.—Austin 2000, orig. proceeding).

> . . . Communications and records should not be subject to discovery if the patient's condition is merely an evidentiary or intermediate issue of fact, rather than an "ultimate" issue for a claim or defense, or if the condition is merely tangential to a claim rather than "central" to it. . . . As a general rule, a [patient's] condition will be a "part" of a claim or defense if the pleadings indicate that the jury must make a factual determination concerning the condition itself.

*R.K.*, 887 S.W.2d at 842-43; *see also In re Christus Health Se. Tex.*, 167 S.W.3d 596, 602 (Tex. App—Beaumont 2005, orig. proceeding). Ordinarily, whether a condition is a part of a claim or defense should be determined on the face of the pleadings, without reference to the evidence that is allegedly privileged. *R.K.*, 887 S.W.2d at 843 n.7.

The jury was asked to decide whether Appellant has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code Ann. § 841.003(a)(2) (West Supp. 2015). Both experts considered the health status and physical limitations of Sells in determining whether he has a behavioral abnormality. The Appellant's own expert testified that

28

Appellant has health issues and physical disabilities that created limitations that would make him less likely to reoffend, and he explained that such limitations functioned as a "protective factor" that reduced his overall risk for reoffending. On this record, the trial court could have reasonably concluded that when the Appellant's own expert testified that the health and physical limitations made it less likely that Appellant would reoffend, Appellant put his health at issue as a defense. Because under the facts of this case Dr. Nguyen's testimony has "legal consequence" to the jury's determination of behavioral abnormality, the trial court could have reasonably concluded that the exception in Rule 509(e)(4) applies to overcome the physician-patient privilege, and the trial court did not abuse his discretion in overruling the objection. *See* Tex. R. Evid. 509(e)(4). We overrule appellant's fifth issue.

CUMULATIVE ERROR

In his final issue, Appellant argues that reversal is required because of the "cumulative effect of the errors in this case[,]" summarizing issues one through five. The State argues there were no errors and no cumulative error.

Multiple errors, even if considered harmless when taken separately, may in some instances result in reversal and remand if the cumulative effect of such error is harmful. *Jones v. Lurie*, 32 S.W.3d 737, 745 (Tex. App.—Houston [14th Dist.]

2000, no pet.) (citing Tex. R. App. P. 44.1(a) and *Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 570 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex. 1998)); *see also Schreiber v. State Farm Lloyds*, 474 S.W.3d 308, 318 (Tex. App.—Houston [14th Dist.] 2015, pet. filed). To reverse a judgment and order a new trial, we must determine that the error committed by the trial court was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Weidner v. Sanchez*, 14 S.W.3d 353, 377-78 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Fibreboard Corp. Pool*, 813 S.W.2d 658, 695-96 (Tex. App.—Texarkana 1991, writ denied); Tex. R. App. P. 44.1(a)). The appellant must show, based on the record as a whole, that but for the alleged errors, the jury would have rendered a verdict favorable to him. *Id.* at 378. Nevertheless, we are aware of no authority holding that non-errors may, in their cumulative effect, cause error. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999); *Bryant v. State*, 282 S.W.3d 156, 176 (Tex. App.—Texarkana 2009, pet. ref'd). In light of our previous analysis overruling Appellant's other issues, and based on the record before us, we find no basis to support a cumulative error argument. Therefore, we overrule Appellant's sixth issue.

Having overruled all issues on appeal, we affirm the trial court's judgment and order of commitment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on December 1, 2015
Opinion Delivered April 14, 2016

Before McKeithen, C.J., Kreger and Johnson, JJ.